Beacom, J.
Plaintiff, the Cleveland Electric Illuminating Company, is a corporation organized under the laws of Ohio, engaged, in the city of Cleveland and vicinity, in furnishing electric light and power. Defendant, the city of Cleveland, is a municipal corporation under the laws of Ohio. The other defendants are, respectively, the mayor, the city solicitor and the members of the city council of said city.
*58 In February of this present year the mayor of Cleveland, acting under the provisions of Section 225 of the Municipal Code, filed with the council written charges against seventeen member® of the council, alleging against them misconduct in office. Against fifteen of these councilmen it was alleged, in substance—
“That each of them being a member of the council and thereby an officer of the city, did allow his vote upon an ordinance to be controlled by the Cleveland Electric Illuminating Company, said control being exercised by contributions to the individual campaign funds of some of said persons as candidates for said offices. ’ ’
Against two other councilmen it was alleged “That said ................ and ................, on the 6th day of February, 1905, being members of the city council of Cleveland, upon a certain ordinance them pending before said council providing for the confirmation of the report of the commission for the fixing of the terms of the annexation of South Brooklyn, did vote adversely to the confirmation, they being influenced by money paid to them so to cast their votes against said ordinance.” Only such parts of said charges as are necessary to show their substantial character are here given.
Subsequently, the city council entered upon the hearing of said charges, claiming to act under authority of said Section 225 of the Municipal Code and to be governed in its proceedings by the provisions thereof and claiming to have power thereunder “to issue compulsory process to compel the attendance of persons and the production of books and papers before the council, and such power to compel the giving of testimony by attending witnesses as is conferred on courts of justice. ’ ’
In the course of said hearing the general manager of plaintiff, its bookkeepers and some of its directors were called as witnesses and were examined concerning the subject-matter of said charges so on hearing before the council, and each of them testified that he had no knowledge of any such payments having been made by the plaintiff company, and the general manager having been directed to bring with him the books of plaintiff showing such contributions, he testifies that plaintiff had no such books and that it had made no such contributions.
*59 On the 3d day of March an- ordinance was passed by the council for the purpose of compelling the production by plaintiff company of its books and papers and requiring it to submit to an inspection thereof by the council, and it is admitted that it is the purpose of the defendants to proceed to an examination and inspection of the books and papers of plaintiff “for the purpose of ascertaining all expenditures made by it relative and pertinent to the charges under investigation by the council of the city of Cleveland.” Thereupon the petition herein was filed, and petitioner prays that defendants may be" enjoined from enforcing or attempting to enforce any order upon the plaintiff or upon its representatives compelling them to produce plaintiff’s books or papers or to permit the inspection thereof by the defendants or any of them for the purposes of obtaining evidence “relevant to the charges under investigation by the council of the city of Cleveland.” Defendants have filed answers, and admit the averments of the petition which entitle plaintiff to relief if it be entitled to any relief herein. To these answers plaintiff filed a demurrer, and by agreement of counsel this present -hearing is a final hearing in this court.
It is claimed by plaintiff that ‘ ‘ The charges state no offense. ’ ’ It is charged against two councilmen that they received bribes, and against others that their votes were “controlled by the Cleveland Electric Illuminating Company by contributions to the individual campaign funds of some of said persons as candidates for office.” This court is of opinion that the parts of these charges already cited in this opinion do constitute a charge of misconduct in office.
Plaintiff claims further that the phrase “head of any department or officer” mentioned in Section 225 does not include city councilmen. That, section provides that—
“It is hereby made the duty of the mayor to have a general supervision of each department and the officers provided for in this act, and where the mayor has reason to believe that the head of any department or officer has been guilty in the performance of his official duty of bribery, misfeasance, etc., he shall immediately file with the council written charges against said head of department or officer, setting forth,” etc.
*60 It is claimed that this section relates only to those officers who are in the executive branch of the government and over whom the mayor has, by the very nature of his office, a supervising authority independent of the statute, but that it was not intended by the Legislature that the mayor should have power to supervise the officers of an independent branch of the government or prefer charges against them; and among other reasons urged, it is said that, independently of this section, the Legislature has provided a complete code for the trial of eouncilmen for misconduct in office—independently of the provisions of Section 225, to-wit. Sections 989 to 993 inclusive, of said code. The substance of these provisions, omitting unnecessary words, is that—
“On complaint under oath filed with the urobate judge of the county in which the corporation is situated by any elector of the corporation, signed by and approved by four other electors thereof, charging that any member of the council has received any compensation for his services as councilman or has been guilty of misfeasance in office, such probate judge shall issue citations to such party for his appearance before him within ten days, and also furnish the accused and the city solicitor with a copy of such complaint. On the day fixed for the return of the citation a time shall be set for hearing the case, and, if a jury be demanded, the judge shall direct the summoning of twelve men, and on the trial it shall be the duty of the solicitor to appear for the prosecution, and the accused may appear by counsel. If the charges in the complaint are sustained on the trial, such judge shall make an order removing such officer from office.”
Here seems to be provided complete legislation for making charges in ease of misfeasance, and for trial before a judge and jury. The entire provision is in harmony with our ideas of the manner in which causes shall be heard.
On the other hand, to hold that Section 225 applies to councilman involves more than one objection. In the first place, it provides for the filing of charges by an executive officer against legislative officers, which is in conflict with the spirit of the legislation of the English speaking race, which everywhere regards it as a fundamental principle of good government that the legislative and executive departments shall be kept as dis *61 tinct and as independent as possible. Moreover, if this provision applies to councilmen, then it provides that a councilman may be tried by his fellow councilmen. A municipal council almost everywhere and almost always is to a degree a political body. Its members meet often in the council chamber and in committee work, and close friendships and sharp rivalries and bitter hostilities arise, so that the trial of a councilman before the council means that he may be tried by a body of men who may be his political adversaries, possibly his personal enemies. Or, the reverse may be trite, they may be closely allied to him for political and personal reasons. Most of the members of a city council could not qualify as jurors in a court of justice in a case either civil or criminal in which a fellow-councilman was a party, for by reason either of close friendship or of a not very friendly attitude he would not be such a disinterested trier as should sit in hearing that cause.
It may be said as to this that the statutes have provided in Section 121 of the Municipal Code that “Council may punish or expel any member for disorderly conduct or violation of its rules, and declare his seat vacant by absence without valid excuse,” but manifestly this is a provision intended to enable the council to preserve decency and decorum in the council chamber during the course of the proceedings.
Inasmuch, then, as the Legislature has made complete provision for the trial of such charges as those we are considering in a tribunal organized for the trial of causes as causes should be tried, and inasmuch as the language of Section 225 does not clearly include councilmen among the officers therein mentioned, and inasmuch as a construction of this section to include councilmen involves the objections before mentioned, the court is of opinion that said Section 225, does not include city councilmen as persons against whom charges may be filed and heard.
It is further claimed that plaintiff is entitled to the relief sought herein under the constitutional rule that no person shall • be compelled to give evidence against himself which might subject him to a criminal prosecution. It is expressly averred in the charges filed in the city council that “councilmen were eon- *62 trolled by the Cleveland' Electric Illuminating Company by contributions to the individual campaign, 'funds of some of said persons as candidates for said offices,” and against two of the councilmen there is an express charge that they received bribes, and, while it is not expressly charged that these bribes were paid by the plaintiff or its agents, the pleadings herein, taken as a whole, indicate unmistakably that if these bribes were given they came from persons acting for the plaintiff. It is elementary that—
“The authorities are exceedingly clear that the witness is not bound to answer where it reasonably appears that the answer will have a tendency to expose the witness to a penal liability or to- any kind of punishment. Whether it may tend to expose the witness to penalties is a point which the court will determine under all the circumstances of the case. It is not necessary that the witness should expressly say th'at the answer would criminate him if this is clear from the nature of the question.
“It is the privilege of a witness to refuse to answer any question which might tend to expose him to any kind of punishment. This privilege extends to such matters as will have any tendency to criminate him.
“This constitutional provision is not limited to cases where witnesses might be called to testify in criminal prosecutions against themselves. The privilege is as broad as the mischief against which it seeks to guard and insures that a person shall not be compelled when acting as a witness in any investigation to give testimony which may tend to show that he himself has committed a crime.” 142 U. S., 562.
“When a question is asked, it is for the court to determine whether any possible answer to it might tend to criminate the witness.
“Constitutional provisions for the security of person and property should be liberally construed.” 116 U. S., 616.
Such are the constitutional provisions for the protection of all persons, which is invoked herein by the plaintiff for its protection against being required to submit its books and papers to a general inspection in the hearing which is had of the charges before mentioned. Those charges are, substantially, that certain public officers were guilty of misfeasance or perhaps of crime in accepting bribes from the plaintiff company. *63 It is admitted that the purpose of investigating the books and papers of the plaintiff is to obtain evidence tending to substantiate these charges against these eouncilmen. If these books or papers tend in any way to substantiate the charges against the eouncilmen, it is manifest that they do tend to incriminate the plaintiff, its officers, agents or employes, for, if the eounoilmen have been guilty, the plaintiff’s representatives must have been under the law equally guilty. If the papers of the plaintiff were produced and were inspected, one of two things would result: First, they would show nothing tending to substantiate the charges against the eouncilmen; or, second, they would tend to substantiate those charges. If they in no wise tended to substantiate the charges, then their absence from this hearing can in no wise injuriously affect the prosecution. But if, on the other hand, they do tend to sustain those charges, then they do and must tend to criminate the representatives of the plaintiff company.
It being manifest to a court that if these books and papers could tend in any way to be useful to the prosecution in this hearing, they then must tend to subject the plaintiff company or its representatives to penalties and punishment, it becomes the duty of a court to say that,- inasmuch as these papers will either show nothing whatever tending to support these charges, or else will show something tending to criminate plaintiff herein, plaintiff should not be required to submit its books and papers to the inspection against which it seeks relief herein.
Other claims have been made by counsel for plaintiff in argument. It is claimed that Section 225 of the Municipal Code is a nullity because no penalty has been provided therein. This claim it is unnecessary to pass upon. It is also claimed that the attempted proceedings complained of herein are in violation of Section 14 of the Bill of Rights of the state of Ohio, which provides that “The right of the people to be secure in their persons, houses, papers and possessions against unreasonable searches and seizures shall not be violated.” This is Section 4 of the Constitution of the United States, and while that provision is a limitation only upon the federal government, the language is the same as that of the constitutional provision *64 of Ohio, and therefore the reasoning of the United States courts concerning it is applicable here. The principles enunciated in Bond v. United States, 116 U. S., 616, and the reasoning in the majority opinion in that case, would perhaps warrant a court in holding that the inspection sought to be had herein is an “unreasonable search.” But it is likewise unnecessary to pass upon this claim.
Squire, Sanders & Dempsey and T. E. Eogsett, for plaintiff.
Baker, Estep, Payer, Adams & Carey, City Solicitors, for defendants.
The court, therefore, does not pass upon either of the claims of plaintiff, first, that Section 225 of the Municipal Code is a nullity; or, second, that plaintiff is entitled to an injunction because that which is sought by the defendants to do constitutes an “unreasonable search” under the provisions of the Constitution, and the court does not pass upon- those claims because, as already indicated, the court is of opinion that plaintiff is' entitled to an injunction, first, because Section 225 does not warrant the filing of charges against and the trial of councilmen; second, because the acts complained of herein do constitute an attempt to compel the production of papers which must be either ■ irrelevant to the charges in question, or else tend, while supporting -these charges, to also incriminate the persons whose papers were produced and inspected.
Perpetual injunction allowed as prayed for.
Defendants except, and give notice of their intention to appeal to the circuit court.